JEANNE M. GRAF, Plaintiff-Appellant, v. ST. LUKE'S EVANGELICAL LUTHERAN CHURCH, Defendant-Appellee.

Second District   No. 2—92—0423

Opinion filed December 8, 1993.—Rehearing denied January 19, 1994.

Donald G. Weiland, of Chicago, for appellant.

Thomas W. Starck and Debra L. Conforti, both of Schoen & Smith, Ltd., of Chicago, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, Jeanne M. Graf, appeals the circuit court's orders granting summary judgment for defendant, St. Luke's Evangelical Lutheran Church, on her complaint for personal injuries and denying her motion for leave to amend her complaint. On appeal, plaintiff contends that material issues of fact exist which preclude summary judgment for defendant and that the court abused its discretion in refusing to allow her to amend her complaint. We reverse and remand.

Plaintiff alleges that she suffered personal injuries when she slipped and fell on the snow-covered steps of defendant's church. The complaint alleges that defendant was negligent in creating an unnatural accumulation of ice and snow on the steps.

Defendant filed a motion for summary judgment (735 ILCS 5/2—1005 (West 1992)). Defendant contended that no genuine issues of material fact existed, that there was no evidence that defendant caused the accumulation of ice and snow on the steps, and that there was no evidence that the accumulation was unnatural. Defendant supported its motion with the depositions of plaintiff and Lee Swanson.

Defendant's church is located at the corner of North and Larch Avenues in Elmhurst. Plaintiff went to the church at around 6:30 p.m. on January 5, 1989, to practice with her rock band, Romantic Fever, in the church basement. Swanson, the band's manager, was the vice-president of the church council. The building is reached by a number

of wooden stairs. The stairs have a handrail down the middle, but not on the sides.

As she faced the bottom of the stairs looking down, plaintiff could see a mixture of ice and snow on the right side of the steps to a depth of between one-half inch and three inches. Snow had been thrown to the left side of the stairs over the handrail and this side was impassable.

As plaintiff left the church about 10 p.m. she slipped on the first or second step. She fell down the rest of the stairs, injuring her back.

Plaintiff did not know the source of the snow on which she slipped. She did not know who had partially removed the snow from the steps. When asked whether anything about the stairs themselves contributed to her fall, she stated that there was no handrail down the right side and that the steps were warped.

Swanson testified that there had been snowfall during the week before plaintiff's fall. At several times during the day on January 5, he had noticed snow on the steps. The church retained Penny and Hank Mandziara to perform custodial duties, including removing snow from the church steps.

Swanson stated that there was an "administrative problem" regarding the removal of snow from the steps. He had discussed the problem with the minister, Rev. Dale Buetler, who was "very perturbed" that the snow was not being cleared within a reasonable time and was not being cleared to his satisfaction. Rev. Buetler expected complete snow removal, meaning edge to edge on the steps. Before the accident, Swanson had talked with the Mandziaras about this problem and conveyed the minister's feelings about complete snow removal.

Swanson reiterated that snow removal had been a continuing problem. Sometimes various volunteer groups at the church or church members would undertake partial snow removal. Nevertheless, it was the Mandziaras' job to ensure that it was completed. Swanson had said after the accident that "had the snow removal been taken care of, this wouldn't have occurred."

The court granted defendant's motion, stating that "none of the witnesses had specific knowledge as to who, if anyone, had attempted to clear a path up the stairway."

Plaintiff filed a motion to reconsider to which she attached the affidavit of Penny Mandziara. Mandziara stated that she had been hired for snow removal and had discussed "edge to edge" removal with the pastor. After the snowfall she moved snow on the church staircase from one side to the other, but did not clear it completely. Except for

Lee Swanson removing snow from the porch, she and her husband were the only persons who removed snow at the church.

Plaintiff also sought leave to file her first amended complaint to add allegations related to the condition of the stairs. The court denied both motions, and plaintiff perfected this appeal.

Plaintiff first contends that the court erred in granting summary judgment for defendant because material issues of fact exist concerning whether defendant was responsible for an unnatural accumulation of snow and ice on the church steps. Defendant responds that the court properly concluded that there was no evidence specifically showing that defendant or its agents contributed to an unnatural accumulation of ice and snow on the stairway.

Summary judgment is a drastic means of disposing of litigation and should be allowed only when the right of the moving party to judgment is clear and free from doubt. (*Mitchell v. Jewel Food Stores* (1990), 142 Ill. 2d 152, 165.) The purpose of a summary judgment proceeding is to determine whether there are any genuine issues of material fact which should be tried. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) In making this determination, the evidence is to be construed strictly against the movant and liberally in favor of the opponent. (*Tersavich v. First National Bank & Trust Co.* (1991), 143 Ill. 2d 74, 80-81.) Only if the pleadings, depositions and affidavits reveal no genuine issue of material fact is the moving party entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1992); *Crane v. Triangle Plaza, Inc.* (1992), 228 Ill. App. 3d 325, 328.

In an action for negligence, the plaintiff must set forth sufficient facts to establish a duty owed by defendants to the plaintiff, a breach of that duty and an injury proximately caused by the breach. (*Vesey v. Chicago Housing Authority* (1991), 145 Ill. 2d 404, 411.) If the court is unable to infer a duty on the part of defendants, no recovery is possible and summary judgment is proper. *Vesey*, 145 Ill. 2d at 411.

In order to avoid summary judgment in a case such as this one, a plaintiff must allege sufficient facts for a trier of fact to find that defendants were responsible for an unnatural accumulation of water, ice or snow which caused plaintiff's injuries. (*Finn v. Dominick's Finer Foods, Inc.* (1993), 244 Ill. App. 3d 278, 281; *Crane*, 228 Ill. App. 3d at 328.) While there is generally no duty to remove natural accumulations of ice and snow, a voluntary undertaking may subject defendant to liability if it is performed negligently. (*Wells v. Great Atlantic & Pacific Tea Co.* (1988), 171 Ill. App. 3d 1012, 1017; *Stiles v. Panorama Lanes, Inc.* (1982), 107 Ill. App. 3d 896.) The mere removal of snow leaving a natural ice formation un-

derneath does not constitute negligence. (*Wells*, 171 Ill. App. 3d at 1017-18; *McCann v. Bethesda Hospital* (1979), 80 Ill. App. 3d 544, 549.) Liability will be imposed, however, where a plaintiff shows that an injury occurred as the result of snow or ice produced or accumulated by artificial causes or in an unnatural way, or by the defendant's use of the premises. *McCann*, 80 Ill. App. 3d at 548; *Fitzsimons v. National Tea Co.* (1961), 29 Ill. App. 2d 306, 318.

A number of cases have found potential liability where defendants negligently removed snow from their property. In *Sims v. Block* (1968), 94 Ill. App. 2d 215, plaintiff slipped on an ice ridge created when defendant plowed its parking lot. The court held that the jury could find defendant negligent where defendant was aware that some snow remained after plowing. (*Sims*, 94 Ill. App. 2d at 223.) In *Fitzsimons*, this court affirmed a verdict for plaintiff where there was evidence that plaintiff slipped on ice which was the result of freezing and thawing of snow piled in the parking lot as the result of a previous plowing. (*Fitzsimons*, 29 Ill. App. 2d at 318.) In *McCarthy v. Hidden Lake Village Condominium Association* (1989), 186 Ill. App. 3d 752, the court reversed summary judgment for defendant where plaintiff fell on a snow and ice embankment which extended 6 to 12 inches into the driveway. *McCarthy*, 186 Ill. App. 3d at 758.

Other cases have held that a plaintiff is entitled to recover where some defect in the premises created the unnatural accumulation. *Lapidus v. Hahn* (1983), 115 Ill. App. 3d 795, 800-01 (water dripped from leaky roof and collected in depression on porch); *Linde v. Welch* (1981), 95 Ill. App. 3d 581 (leaky overhead structure caused water to drip); *Wolter v. Chicago Melrose Park Associates* (1979), 68 Ill. App. 3d 1011, 1019 (surface irregularities in parking lot); *Stroyeck v. A.E. Staley Manufacturing Co.* (1960), 26 Ill. App. 2d 76, 84 (sidewalk constructed on severe slope); cf. *Gilberg v. Toys "R" Us, Inc.* (1984), 126 Ill. App. 3d 554, 557-58 (no evidence of depression in or defective design of parking lot which would have caused ice to accumulate); *Zide v. Jewel Tea Co.* (1963), 39 Ill. App. 2d 217 (no evidence that ice resulted from ice melted by using salt and flowing 30 feet across parking lot).

■■ Here, there is sufficient evidence in the record from which a trier of fact could conclude that defendant created or permitted to exist an unnatural accumulation of snow and ice on the steps. Plaintiff testified that the snow had been removed from one side of the stairs and thrown over the handrail onto the other side. A jury could thus conclude that the ice on which plaintiff fell was caused by runoff from the snow piled on the other side of the stairs.

Defendant contends that plaintiff failed to show affirmatively that there was a "nexus" between the snow on the left side of the stairs and the ice on which plaintiff fell, citing *Crane v. Triangle Plaza, Inc.* (1992), 228 Ill. App. 3d 325. That case is distinguishable. In that case, plaintiff alleged that snow piled on the periphery of defendant's parking lot had melted and the runoff had collected in depressions in the parking lot. This court held that plaintiff had failed to establish that the ice on which plaintiff fell could have come from the snow at the edge of the lot. In the instant case, the snow was piled on the left side of the stairs, separated from the opposite side by only a double handrail. It is reasonable to conclude that the ice on which plaintiff slipped came from the snow piled on the other side of the stairs. Thus, *Crane*'s nexus requirement is inapplicable to this case.

Defendant further contends that no evidence exists to support a conclusion that defendant was responsible for the accumulation of snow on the left side of the stairs. Defendant asserts that in the absence of such evidence no liability can attach. Plaintiff attached to her motion to reconsider the affidavit of Penny Mandziara in which she states that only she and Swanson removed snow from the stairs immediately prior to January 5, 1989. The trial court correctly concluded that this affidavit should have been filed with plaintiff's response to the summary judgment motion and was therefore untimely filed. Even disregarding Mandziara's affidavit, however, there was ample evidence from which a jury could conclude that defendant's agents were responsible for the unnatural accumulation of snow on the stairs. Swanson testified that he cleared the porch personally. He further stated that Hank and Penny Mandziara were primarily responsible for snow removal at the church. He stated that volunteer groups at the church or church members would occasionally remove some snow. There was no evidence that anyone not connected with the church ever removed snow from the church steps. Moreover, even if we accepted the tenuous conclusion that some unknown person completely unconnected with the church gratuitously undertook to remove the snow from the steps, a question of fact would still exist concerning whether the church was chargeable with knowledge of the unnatural accumulation on the steps and would thus be liable on this basis. Swanson testified that he was aware of the situation prior to January 5 and had brought it to the attention of other church officials. Even if that defendant or its agents did not create the condition, a jury could still find that it had knowledge of the condition and failed to correct it.

■ Defendant also objects to plaintiff's attempt to rely on the condition of the stairs to defeat summary judgment. Defendant complains that plaintiff did not argue this theory in her response to defendant's motion. However, plaintiff's complaint specifically alleges that the stairs lacked handrails. Further, plaintiff testified about the handrails and the warped condition of the stairs in her deposition, which defendant attached to its motion. Given the statutory requirement that the court consider all the evidence in connection with a motion for summary judgment and construe the evidence in the light most favorable to the opposing party, the court erred in failing to consider this evidence. Plaintiff did not waive this contention by failing to specifically mention it in her response.

■ Plaintiff's second contention is that the court erred in denying her motion to amend her complaint to allege specifically the warped condition of the stairs as a proximate cause of her injury. Defendant responds that the court properly exercised its discretion since the motion came after final judgment and plaintiff failed to attach a proposed amended complaint to the motion, and that the court properly denied the motion for this reason alone. Defendant also contends that once a final judgment has been entered, a motion to amend may only be granted to conform the pleadings to the proof. Defendant argues that plaintiff's proposed amendment did not merely conform the pleadings to the proof, but raised an entirely new theory.

Since we determine that the order granting summary judgment must be reversed, we also reverse the order denying plaintiff leave to amend her complaint. On remand, plaintiff will be free to renew this motion. If a motion in proper form is filed, the court should exercise its sound discretion in deciding the motion pursuant to the standards of section 2—616 of the Code of Civil Procedure (735 ILCS 5/2—616 (West 1992)).

For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

BOWMAN and COLWELL, JJ., concur.